# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **F.H.**

**No. 20-0573** (Wood County 19-JA-72)

**FILED**

**December 10, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.C., by counsel John Woods, appeals the Circuit Court of Wood County's June 18, 2020, order terminating her parental rights to F.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S. L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, Jessica E. Myers, filed a response on the child's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed a child abuse and neglect petition alleging that petitioner left the then one-year-old child with inappropriate caregivers and failed to provide adequate housing for the child. Petitioner stipulated to the allegations in the petition in May of 2019 and waived her right to an adjudicatory hearing. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. That same day, the circuit court granted petitioner a six-month post-adjudicatory improvement period, on her motion.

The DHHR filed a report in January of 2020 that detailed petitioner's participation in her post-adjudicatory improvement period. The report relayed that petitioner initially complied with services, but ultimately failed to obtain appropriate housing and gainful employment during the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

improvement period. Notably, the DHHR reported that it had provided petitioner a Housing and Urban Development ("HUD") voucher for an apartment to which the landlord agreed. However, petitioner declined the voucher and entered into a lease for a different apartment but was evicted soon thereafter. The DHHR also reported that petitioner was employed at a restaurant in November of 2019, but she quit and declined re-employment at that position in January of 2020. Additionally, the DHHR reported that petitioner was not participating in individualized therapy and parenting and adult life skills classes. Petitioner also missed nine consecutive weeks of visitation with the child as a result of her failure to confirm those visitations. Based on petitioner's failure to complete the terms of her improvement period, the DHHR recommended that the circuit court terminate her parental rights to the child.

The circuit court scheduled a dispositional hearing in January of 2020, which was continued until March of 2020. However, following this Court's March 22, 2020, Administrative Order declaring a judicial emergency due to the COVID-19 crisis, the circuit court again continued the dispositional hearing. Finally, in June of 2020, the circuit court held the final dispositional hearing. Petitioner moved for a post-dispositional improvement period and testified that her attempts to obtain housing and employment were hampered by the COVID-19 pandemic. Petitioner asserted that she applied for ten different employment opportunities via the internet in "May or June" of 2020, and one opportunity in person during that same time frame. Petitioner also explained that she had been living at the Salvation Army shelter for the past six months and that she was on a waitlist for low income housing. She generally asserted that her delay in obtaining housing was due to the pandemic. The DHHR introduced petitioner's parental fitness evaluation, wherein the evaluator issued a "very poor" prognosis for parental improvement based, in part, on petitioner's failure to accept responsibility for the conditions of abuse and neglect. According to the report, petitioner "denied any wrongdoing" and asserted that the conditions of abuse and neglect were not her fault. During the evaluation, petitioner asserted that the "people who she trusted" were at fault for the neglect of the child.

Ultimately, the circuit court found that petitioner failed to make significant progress despite the DHHR's numerous efforts to help her. Further, the court found that petitioner had "issues with taking responsibility for her housing and employment." Finally, the circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the welfare of the child. Accordingly, the circuit court denied petitioner's motion for a post-dispositional improvement period and terminated her parental rights by its June 18, 2020, order.[2]

The Court has previously held:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing

---

[2]The father's parental rights were also terminated below. According to the parties, the permanency plan for the child is adoption in her current foster placement.

court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and in terminating her parental rights. Petitioner asserts that, but for the COVID-19 pandemic and resultant shutdown, "it [was] highly likely that [she] would have found employment and stable housing by the time of the dispositional hearing." She further argues that the DHHR failed to prove by clear and convincing evidence that there was no reasonable likelihood that she could substantially correct the conditions of neglect or abuse in the near future. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Further, because petitioner was granted a prior improvement period, she was required to show that she "experienced a substantial change in circumstances" and that due to the change in circumstances, she was likely to fully participate in a second improvement period. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). On appeal, petitioner completely fails to acknowledge the burden she carried to be granted a post-dispositional improvement period or to offer any argument in support. Nevertheless, it is clear from the record that petitioner was not likely to fully participate in a post-dispositional improvement period based on her performance in her post-adjudicatory improvement period. From May of 2019 to November of 2019, petitioner failed to complete or substantially participate in the terms of her post-adjudicatory improvement period. In addition to petitioner's failure to obtain housing and employment during this time, she was noncompliant with services, such as individualized therapy and parenting and adult life skills classes, and she failed to attend visitations with the child. Furthermore, petitioner presented no evidence that she experienced a substantial change in circumstances during this time that rendered her more likely to substantially comply with the terms of an improvement period. Instead, petitioner's forensic psychological evaluation, that was completed near the end of her post-adjudicatory improvement period, revealed that she had refused to accept responsibility for the neglect and abuse of the child.

This Court has recognized that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator

3

of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). In contradiction to her early admission of neglect and abuse in the proceedings, petitioner shifted responsibility away from herself and onto "the people she trusted" at the time of the neglect. Thus, the evidence below suggests that petitioner was less likely to fully participate in and benefit from a post-dispositional improvement period. Therefore, we find no error in the circuit court's decision to deny her motion.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the child. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with a reasonable family case plan, despite an extended period of time to do so. She failed to meet the goals of the case plan during the improvement period's duration, from May through November of 2019, and further failed to meet those goals thereafter. Thus, the circuit court did not err in concluding that there was no reasonable likelihood that she could correct the conditions of neglect or abuse in the near future. Petitioner's main argument on appeal is that, if not for the COVID-19 pandemic and resultant shutdown, she could have found employment and housing and corrected the conditions of neglect and abuse. However, it is clear from the record that petitioner was provided ample opportunity prior to the inception of the COVID-19 pandemic to obtain housing and employment, and she failed to do so. Her success in obtaining and maintaining employment and housing was purely speculative.

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Accordingly, we find no error in the circuit court's conclusion that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future.

Finally, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As the circuit court's finding is fully supported by the record below, we find no error in the termination of petitioner's parental rights, rather than the imposition of a less restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 18, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: December 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

5